We'll hear the final case to be argued today, Joules Limited v. Macy's. Thank you, Your Honor. May it please the court, my name is Rachel Jakes with the firm of Mashaw Brennan. And we represent the Plaintiff Appellant Joules Limited. This trademark infringement action is between two retailers of women's clothing. Plaintiff Appellant Joules Limited, who is the owner of the senior and federally registered trademark for Joules. And defendant appellee, Macy's Merchandising Group, who I will refer to as MMG, who is the owner of the Junior Mason Joules Mark. The women's clothing at issue is the same in price, quality, purpose, and aesthetic. And is marketed to overlapping millennial females via nearly identical advertising methods. And sold in identical types of trade. The women's clothing at issue is also marketed and sold to consumers under highly similar trademarks, Joules and Mason Joules. The Senior Joules Mark has been used in US commerce for over a decade and is both inherently and commercially strong. Are the marks really highly similar? I would submit that- One is Joules, one is Mason Joules. I would submit that they are, your honor. The Joules portions of the mark are nearly identical, and Mason is descriptive and subordinate. Given the similarities between the trademarks, the products, and overlapping consumer, the potential for confusion is great, and Joules has provided probative evidence of consumer confusion. I'm not sure how relevant that is, though it does go to the strength of the mark. But why has your client not taken action over the many people who use Joules in other ways? And has taken action against this particular person who is using something slightly different? Your honor, Joules can only take so many actions at one time. A trademark owner is not required- No, I understand that, but it does go to the question of the strength of the mark. And one might have expected at least a letter or something to the people who use the identical name as a way of defending the mark would be in the record. And I was kind of puzzled that there isn't any of this attempt to at least get these other people not to use it. And then this, which is slightly different and very much more aggressive. And I just wondered if you had any explanation. Your honor- Other than you can't sue everybody. We did provide evidence of enforcement. Joules does enforce its mark with respect to the particular third party uses that are identified here. Joules has not enforced its mark yet. Also, regarding the third party uses here, I mean we don't, these are websites and we don't know the extent of their use. They could be mom and pop shops. Why Joules enforced against Mason Joules is because they filed a federal application to register this mark. We were notified of it and we engaged in negotiations to attempt to resolve it. And it wasn't successful. Thank you. Regarding the first issue on appeal, well, first of all, the four issues on appeal are competitive proximity, strength, similarity, and actual confusion. Regarding the first issue of competitive proximity, the district court incorrectly found that Joules and Mason Joules clothing was not proximate because they are not sold in the same stores. However, sales in the same stores are not the sole factor determining proximity. An evaluation of proximity concerns whether the products compete with each other, the nature of the products, and the structure of the relevant market. Here, the highly similar nature, purpose, and price of the Joules and Mason Joules products, coupled with the fact that they compete for the same target millennial females, via nearly identical marketing channels, and are sold in identical types of trade, demonstrates competitive proximity. The- The district court found that Joules, in terms of national retailers, sold primarily rain boots and rain wear, and that Mason Joules doesn't sell rain boots or rain wear. That is correct. Yeah, doesn't that undercut the proximity argument? There are different products to a great extent. Your Honor, it does not undercut the proximity requirement because, yes, Joules sells rain boots, and it sells rain jackets, but it also sells women's clothing. And it sells women's clothing online, in boutiques, in department stores. So just because it also sells rain wear and rain boots does not negate the fact that- It's not that it's also, in terms of, and I'm not suggesting it negates it, but it makes it a little less competitive, would you agree with that, if they're selling primarily different things? But they're not selling primarily different things, because Joules does sell women's clothing. And there were specific findings regarding the women's clothing, that the women's clothing that Joule sells, in department stores and online, is similar in price, it's similar in quality. It competes for the same target consumer as Mason Joules. And, Your Honor, I would submit that even if Joules only sold rain boots and rain jackets for women, I mean, to the extent that someone is familiar with Joule's jackets and rain boots, and they see the Mason Joules line, they'll think that, oh, they expanded into clothing. So, I mean, the issue here is that, one, we are selling clothing. Two, it's competitive with Mason Joules, and the fact that they sell rain boots and rain coats does not negate the potential for confusion here. What about the actual confusion factor? Would you address that? Yes, is there anything specific? Well, the trial court considered the survey evidence and found the Mason Joules evidence more persuasive, and that's a finding of fact. Yes, Your Honor. And with respect to Mr. Porrett's survey, the issue there is that it was an ever ready survey, which never shows the senior user's mark, so it requires that the senior user's mark must have top of mind awareness. And top of mind awareness is really those famous marks. It's marks that consumers are bombarded with every day, that it's literally at the top of their mind. Here, Joules is not top of mind. That's what they aim to be. Didn't both surveys have something of a problem? And the question is really whether the appropriate way is to have the marks be shown in a survey next to each other or not. And that depends on how often the two things are next to each other or not. So that this, the propriety of the survey, the relevance of the survey goes back to how close the sales are. That's what I think we held in Malatier, and which is the better survey depends on this other question. The district court found that their survey was the more appropriate one, and is the standard on which I review that plain error, or whether I would have found it a different way? I'm sorry, can you repeat the last portion? Is the standard on which I review the decision about which of the surveys was better, plain error, or whether I might have done it a different way, were I the district judge? The standard here is clear error. Clear error, yeah. Yeah, it's not what I would have done. That is, I might have said these two are better looked at in the way your survey did, but that's not enough for me to reverse the district court, is it? Your Honor, we would submit that it is a marketplace reality that the marks are considered in close proximity, given that they're sold on the same third party websites, and also given the fact that they're . . . You're saying that the district court clearly erred with respect to the surveys? Yes, because we think that the marks are, you can find the marks in close proximity, given the fact that they're targeting the same consumer through the same advertising channels. Yep. Good. All right, you have some time for rebuttal. We'll hear from the other side. Good morning, Your Honors. May it please the court, Anthony LoCicero from Ames to Rothstein and Ebenstein for Macy's. Your Honor, Jules' speculation as to how confusion could theoretically occur is no substitute for Judge Wood's careful review of the extensive record, as Judge Calabresi pointed out. The standard for the review of the survey and the other factual findings is clear error, and we submit that no clear error was presented. Judge Chin pointed out that the marks are not highly similar, and indeed, Judge Wood found that that factor, namely similarity of the marks, rests with Macy's. The judge understood that the words were two, that they were two words versus one word, that their visual presentation was different, and so on. And she even gave credit to Jules' argument that Maison, which is translated as house in French, did little to distinguish the marks in terms of their meaning. But of course, does much to distinguish them in terms of their sight and their sound, which is the test for similarity. The Jules trade market issue here is a weak one, and we know it's a weak one for many reasons. Not the least of which is that Jules has repeatedly said that Mr. Porrett's survey of- Could you address the question of close proximity and the effect that that has on the two surveys? Yes, yes, Your Honor. That seems to me the key issue in the case. I think, Your Honor, it was correct that in fact, the competitive proximity issue is what determines the propriety of the survey format. Because the cardinal rule of surveys, and most of those rules have been set by this court, is that the surveys must accurately replicate the marketplace. And if the goods are in competitive proximity and are sold in a certain way, then a certain format is appropriate. So for example, Dr. Belch, Jules' survey expert, used a modified line-up survey. It's also called a squirt survey. Why is that? Because there's a seven circuit case, squirt versus seven up, in which soda bottles are sold side by side on a grocery shelf, and that's not this case. As Judge Wood said, in this case, the products almost never are sold in the same channels of trade. They never appear in the same stores. Jules is never sold at Macy's. It's never sold at Macy's. How do these principles apply to online shopping? I mean, they can be together as you're looking at your computer in that sense. They can be, Your Honor, of course. But, so for example, if Jules and Maison Jules were sold competitively on Jules USA, that would be one thing. If they were sold competitively on Macy's.com, that would be another. But the fact that a tiny fraction, Judge Wood's word, a tiny fraction of Jules products are sold on Amazon, of Maison Jules products are sold on Amazon, and some percentage, not shown in the record, of Jules products are sold on Amazon, doesn't mean that they're competitively proximate. It can't be. It cannot be that Jules is right, as it said in the blue brief at page 11, that the court should look at to determine whether a not too discerning consumer could encounter both marks during the same shopping trip. That cannot possibly be the law. Even though- Does the record indicate what particular products are sold on Amazon? The record indicates- Garments or not. Yes. The Jules products sold on Amazon include rain boots and include tops, bottoms, dresses, and so on. Do we have a different question of whether the Polaroid factor of competitive proximity comes out one way or another or is neutral, and whether the competitive proximity is enough so that a survey on confusion is more appropriate than another? That is, there might be enough competitive proximity so that we're not ready to say that that Polaroid factor cuts in your favor, maybe not in the other, but maybe at least at the level of neutrality, and yet that competitive proximity is so slight that in terms of which survey will tell us more about confusion, one that does not put them next to each other is the better survey. Is that possible? I think so, Your Honor. I think that it's important to remember this. Dr. Belch testified that he was not aware of the Amazon issue. He was not aware that anybody's goods were sold on Amazon, and his test was one thing. He tested Macy's.com using this side-by-side survey. Now, he did it wrong. He cropped the websites that he showed to the customers. He used a stimulus that has nothing to do with the Maison Jules name. He selected it because his wife's friend's daughter thought that millennials might buy such a thing, and therefore violated the cardinal rule of controls, which is that you keep everything you can the same and vary the thing you're testing. Scientific method. That's the standard way surveys are done. So the survey—and he picked the wrong universe. So the survey was, as Judge Wood found, clearly erroneous. But the survey is one aspect of actual confusion. And let's talk about actual confusion. Because the judge found in the special appendix at page 22, citing the transcript, plaintiff has conceded that it has received no reports of actual confusion regarding the source of Maison Jules products, either directly or through its retail and distribution partners. The plaintiff never even said that there was a consumer who was confused. We've had three years of sales from 2013 to the trial in 2016. Not one consumer was confused. And that—and what does Jules try to do? It finds three misspellings, which are evidence of misspellings, not confusion. None of the misspellers were called to testify or deposed. They—Jules executives contrived some internet search—searches. No one knows how those searches were considered by the search algorithm. There was no evidence of that. The evidence of actual confusion—which, first of all, we didn't have to prove actual confusion, as this Court knows well. They didn't have to prove actual confusion. But its absence, as this Court said in McGregor-Doniger, the absence of actual confusion is good evidence that there's no likelihood of confusion. It hasn't happened in three years. And it hasn't happened because the marks—because the Jules mark is weak. Even Dr. Belch, even if Dr. Belch is right, 16.2 percent of the people who were shown the Jules mark had ever heard of it before. Now, Judge Forrest in the Citicorp case and Judge Peck in the Denimafia case were confronted with a similar situation, that as a plaintiff like Jules, who tries to have it both ways, attack Mr. Perret's survey on only one ground, that the mark is too weak. Jules is too weak to justify an everybody survey. On the other hand, they say, earlier in the brief, that Jules is a strong mark entitled to a broad scope of protection. They can't have it both ways. In fact, the Jules mark is weak. In fact, there has been no actual confusion. In fact, the marks are not highly similar, as Judge Chin pointed out. So, when we have, and as the competitive proximity, you look at the products, you look at how they're sold, where they're sold in competitive environments. And let's say that Nordstrom competes with Macy's. Have Macy's executives in the back, they may disagree. Not in the record. But let's assume that Macy's and Nordstrom are direct head-to-head competitors. There are no Jules clothing sold in Nordstrom's. And there's certainly no Jules clothing sold in Macy's. There's Maison Jules clothing sold in Macy's, and none in Nordstrom's. So, Judge Wood was not clearly erroneous in finding that the competitive proximity, like the other factors, found in favor of Macy's. And unless Your Honor has, Your Honors have further questions, we'll rest on the briefs. Thank you. We'll hear the rebuttal. Thank you, Your Honor. Just a few points. There was a question regarding online sales and really the importance of those online sales. And I mean, we would submit that the online sales are very important. The target millennial shops online. She relies on social media for fashion advice. She relies on bloggers for fashion advice. You know, we have evidence of thousands of products, of Maison Jules products being sold on the same website as Jules is. So... Do we apply the Polaroid factors differently in the context of online shopping? I am not aware of a case that says that. But I mean, online shopping is the norm now. It's a huge medium where people shop. So to the extent that you have products being sold on the same exact website. And apart from that, the fact that we are advertising in the same channels, and that the millennial consumer is going to be exposed to both of our marks and our clothing. I think that that is a big consideration. Because, I mean, we're both sold in department stores. But the internet is easily accessible. And that is where this shopper is doing a lot of her shopping. And if it is, then we have to apply the possibility of confusion there. There's no question. But it is inconsistent with applying them in whatever way the sales are actually occurring. Correct. Your Honor, we would submit that the district court did make various errors. And that the four issues on appeal should favor Jules. And we would refer you to our briefing on those issues. Thank you. We'll reserve decision. That completes the argued cases. And accordingly, I'll ask the clerk to adjourn. Court is adjourned.